IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DIMETRIS DUNKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:08-CV-331-WKW [WO] |
| | ) | |
| MONTGOMERY COUNTY BOARD | ) | |
| OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dimetris Dunklin, a former employee of the Defendant Montgomery County Board of Education ("Board"), brought this action against the Board for racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and 42 U.S.C. § 1981. Pending is the Board's motion for summary judgment (Doc. # 17).[1] Dunklin filed a response in opposition to summary judgment (Doc. # 19), and the Board replied (Doc. # 22).[2] Based upon careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the Board's motion for summary judgment is due to be granted in part and denied in part.

---

[1] The Board filed a brief in support of its motion (Doc. # 18).

[2] It is not necessary for disposition of this motion to consider Dunklin's separately filed supplement to his brief (Doc. # 21).

## I.  JURISDICTION AND VENUE

Subject-matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 2000e-5(f)(3).  The parties do not contest personal jurisdiction or venue, and the court finds that there are allegations sufficient to support both.

## II.  FACTUAL AND PROCEDURAL BACKGROUND[3]

Dunklin voluntarily resigned from his position as a Data Management Technician III with the County school system in February 2005 after the Board declined to promote him to Network Administrator.  The Board posted the position twice in 2004, once in September, taking it down unfilled, and again in November, hiring John Burton, a white male, over Dunklin, who is black.  Earlier, in May 2004, the Board also denied Dunklin a promotion to Lead PC Technician/Assistant Network Specialist ("Lead PC"), instead promoting Steven Causey, a white male.[4]  Dunklin sued on the basis that the Board did not promote him in either instance because of his race.

The Board hired Dunklin in November 2002 as a Data Management Technician II.  Prior to working for the Board, Dunklin worked in computers for Colonial Bank.  Dunklin testified that, while at the bank, he "supervised" three employees, by leading them in activities.  (Dunklin Dep. 36, Sept. 29, 2008 (Ex. 2 to Pl.'s Resp.).)  In September 2003, the

---

[3] Record citations are given for contested or unclear facts.

[4] The parties dispute whether Dunklin filed a letter of interest for the May 2004 position, but because Dunklin has submitted what appears to be a letter to the Director of Human Resources, dated May 17, 2004, expressing his interest in the position (Ex. 4 to Pl.'s Resp.), the evidence will be viewed, for purposes of this motion, in Dunklin's favor.  Whether Dunklin submitted a letter is a question of fact to be resolved at trial.

Board promoted him to a Data Management Technician III position.  When the Board posted a position for Lead PC in May 2004, Dunklin submitted a letter of interest, and when the position of Network Administrator became available twice in the fall of 2004, Dunklin submitted letters of interest on both occasions.

The Board promoted Causey to the Lead PC position.[5]  In his deposition, Cleon "Buddy" Parker, the computer services director who screened for and selected the candidates,[6] testified that Causey, who had been working for him, was "brilliant on computers," that he "digs" and "doesn't quit," that he works from home after business hours, sending emails late into the night following up on his progress on a project.  (Parker Dep. 38, Sept. 29, 2008 (Ex. 12 to Pl.'s Resp.).)  Parker stated that Causey had worked consistently that way since he started.  (Parker Dep. 38.)  Causey "was then and he is now the guy that when your average technician goes to work on a problem or works on a problem, if they are unable to find the problem and fix the problem . . . . Steven finds the answer."  (Parker Dep. 45.)  Causey also testified to why, in his opinion, his position prior to the promotion was more difficult than Dunklin's.  (*See* Causey Dep. 28, Sept. 29, 2008 (Ex. 9 to Def.'s Mot.).)

---

[5] Dunklin argues that the Lead PC position was created specifically for Causey.  (Dunklin Dep. 84.)  In Dunklin's opinion, because the position's duties catered to Causey and because Causey received the position, it must have been specifically created for him to fill.  (*See* Dunklin Dep. 84-85.)

[6] Neither party challenges whether Parker was a decision-maker.  It appears from the testimony that Parker made a recommendation to the superintendent who then made a recommendation to the Board (*see* Dunklin Dep. 92-93).

Dunklin testified (Dunklin Dep. 32) that Mark Casillas, the Support Personnel Specialist (Casillas Aff. ¶ 1 (Ex. 4 to Def.'s Mot.)), was a decision-maker as well, but the briefs do not develop his role.

Causey's only degree, however, is a high school diploma. (Causey Dep. 6.) Dunklin has two associate degrees, one in computer information systems and the other in network design and administration. After reviewing Dunklin's application during his deposition, Parker admitted that a person with that "experience and education" had "better training" "on paper" than someone with no associate's or four-year college degree. (Parker Dep. 16-17.)

When the Network Administrator position was posted in September 2004, Dunklin submitted another letter of interest. Dunklin claims that Parker told him he would be allowed to fill the position (Dunklin Dep. 27), but the position was not filled, and the posting was taken down. Dunklin recalls asking Parker why the position was not filled, and Parker attributed it to lack of funding. (Dunklin Dep. 26.) In his deposition, however, Parker offered several reasons for why a position *might* not be filled such as lack of finances or qualified candidates, but he could not remember the reason why that specific position was unfilled or any discussion with Dunklin about the reason. (Parker Dep. 30-31.) Dunklin recalls also asking Jimmy Barker, assistant superintendent of human resources, why the position was unfilled, and he said he would follow up with Dunklin, but never did. (Dunklin Dep. 25-28.)

In November 2004, the Network Administrator position was posted again. The job posting listed qualifications covering various computer skills and strong communication and

team-working skills.[7]  The Board hired Burton.  Parker knew Burton personally from church and had worked with him on church committees.  (Parker Dep. 40.)  Parker had observed Burton's performance and personality through those interactions, and had encouraged him to apply for the position, but admitted to not knowing his comparable "propensity for digging and learning" at work.  (Parker Dep. 39-40.)  Parker testified, however, that their association did not influence the selection in any way.  (Parker Dep. 40.)

Burton's application shows that he graduated from high school, obtained an NCTI service technician's certification (H.F.C. system troubleshooting),[8] and took some classes in business management at the University of Alabama.  (Burton Application (Ex. 13 to Pl.'s Resp.).)  He worked for five years with Knology, Inc. ("Knology"), and his application lists numerous technical computer skills and responsibilities.  Where the application form calls

---

[7] The requirements were:

Extensive knowledge of communications protocol . . . .
Extensive knowledge of computer operating systems . . . .
Two years experience in installing and administering Local Area Networks (LANS), Wide Area Networks (WANS) and knowledge of all components of these type networks is required.
Ability to diagnose and repair network related problems, PC's, Printers, and other associated equipment.
Proven ability to administer software and communications systems effectively.
Strong communication skills both oral and written and the ability to function in a team environment are mandatory.

(Ex. 10 to Def.'s Mot.)

[8] Burton testified that his certificates relate to installation and cable service, and proper data flow. (Burton Dep. 7, Sept. 29, 2008 (Ex. 11 to Def.'s Mot.).)

for references, however, none is listed.  There is also no signature on the application.  The job posting states that an incomplete application is not acceptable.

At his deposition, Parker testified that Burton was the "most qualified" candidate for the job because of his "supervisory experience" and his interview.[9]  (Parker Dep. 47.)  When asked to describe Burton's supervisory experience, however, Parker responded: "Well, I mean – now, I'm not going to sit here and tell you that I didn't hear what John [Burton] said when I was sitting right there in that chair."[10]  (Parker Dep. 48.)  Whether Parker knew of Burton's prior supervisory experience at the time he was hired is unclear.

Parker confirmed that the interview must have included a discussion of Burton's technical qualifications, such as his work in databases, network systems, and software programs.  (Parker Dep. 48.)  And Parker noted that another employee participating in the interview, Don Dove, agreed that Burton was the most qualified for the position.  (Parker Dep. 49.)[11]  Parker added that the educational level required for the position did not exceed high school.  (Parker 49-50.)  Having a higher education degree, in his estimation, "does not matter" in this context.  (Parker Dep. 50.)

---

[9] The qualifications do not list supervisory skills on the posting, but Dunklin testified that these were expected of the Network Administrator (Dunklin Dep. 35-36).

[10] Burton had testified to supervising other employees – training and helping them, and delegating and assigning tasks.  (Burton Dep. 12.)  He was not, however, a "titled" supervisor.  (Burton Dep. 12.)

[11] In his deposition, Dove also stated, however, that nothing good *or bad* stood out about Dunklin, and Dove could only recall one potentially negative, minor event, related to employees riding together.  (Dove Dep. 17 & 18, Sept. 29, 2008 (Ex. 7 to Def.'s Mot.).)

Parker also testified to a few reasons why Dunklin was not the right candidate for either position.[12] Parker highlighted Dunklin's "job performance." (Parker Dep. 35.) Parker stated that Dunklin had been working in his area for long enough for Parker "to become familiar with what [he] could expect," and that in his opinion, Dunklin was "average as far as performance within [the department's] areas of responsibility," while Parker was looking for someone "above average." (Parker Dep. 35.) Dunklin "did what you asked him to do," but Parker had no "indication" that Dunklin "would do above and beyond what he was asked to do," or that he was "trying to increase his knowledge in [the department's] particular arena, in [its] jobs." (Parker Dep. 36-37.) According to Parker, Dunklin did not "dig" and "try to learn" like other people.[13] (Parker Dep. 37, 49.) Indeed, Parker testified that he probably would not have hired Dunklin even had Burton not applied. (Parker Dep. 49.)

Parker admitted that he did not know, however, whether he had ever evaluated Dunklin's performance, and that the evaluations were "done quite loosely" as far as whether they were even conducted.[14] (Parker Dep. 42.) Parker also admitted that he never noted his observations about Dunklin's work performance or work ethic in any of his personnel files. (Parker Dep. 41-42.) Additionally, Dunklin testified that he was performing excess work as a technician, and that when he spoke to Parker about it, he said that he would try to secure

[12] The reasons Parker gave for not promoting Dunklin apply to both promotions. Parker stated the reasons consistently and, oftentimes, interchangeably, for both positions.

[13] Parker testified to having contact with Dunklin nearly every day. (Parker Dep. 37.) Parker had similarly frequent contact with Causey. (Parker Dep. 38.)

[14] Parker did clarify that there was a "mechanism" in place for evaluations. (Parker Dep. 43.)

Dunklin a salary raise.  (Dunklin Dep. 56.)  The work Dunklin claims he was performing, up until the time he left, included "major work orders," those that other technicians "couldn't handle."  (Dunklin Dep. 56, 95.)  Dunklin claims that Parker was assigning the extra work orders specifically to him.  (Dunklin Dep. 56.)

Dunklin immediately resigned his position when he found out that the Board had hired Burton as Network Administrator.  Dunklin filed a charge with the Equal Employment Opportunity Commission on February 10, 2005.  (Ex. 12 to Def.'s Mot.)  After receiving a right-to-sue letter from the EEOC, Dunklin filed this action against the Board on May 5, 2008.  (Compl. (Doc. # 1).)[15]  He alleged race discrimination was involved in both promotions, infringing his rights under 42 U.S.C. § 1981 (Compl. ¶¶ 30-34 & (mis-numbered) 22-23), and violating Title VII (Compl. ¶¶ 35-39 & (mis-numbered) 22-23).[16] The Board filed an answer (Doc. # 6) and moved for summary judgment.

### III.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no

---

[15] Dunklin claims to have received a determination from the EEOC that there was reasonable cause to believe the Board discriminated against him on the basis of race, that the Board used subjective decision-making criteria during its promotion process that adversely affects blacks, and that the Board's failure to maintain promotion records violates federal regulations.  (Compl. ¶ 28.)  The Board states in its motion that the right-to-sue letter was issued February 5, 2008 (Def.'s Br. 13), but neither party submitted documentation showing the EEOC's specific findings.

[16] Dunklin also alleged violations under those statutes for the Board's hiring of "whites" for the the Data Management Technician III position, with the same salary as his.  (Compl. ¶¶ 33, 38.)  As the Board noted in its reply, Dunklin effectively abandoned that argument by not responding to the motion for summary judgment on those claims.  (Reply 1.)  Summary judgment is therefore due to be granted on the claims pertaining to those allegations.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation to former rule omitted); Fed. R. Civ. P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial.").  What is material is determined by the substantive law applicable to the case. *Celotex*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family*

*Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). Furthermore, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). Only if the factual dispute is "genuine," however, must the court view the facts in the light most favorable to the non-movant. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Estate of Garczynski v. Bradshaw*, __ F.3d __, 2009 WL 1929191, at *6 (11th Cir. 2009) ("The requirement to view the facts in the nonmoving party's favor extends only to 'genuine' disputes over material facts.").

If the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted), and the nonmoving party "must do more than

simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*) (The plaintiff's "conclusory assertions . . . in the absence of supporting evidence, are insufficient to withstand summary judgment."). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment may be granted in favor of the moving party. *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

Thus, in cases where the evidence before the court is admissible on its face or can be reduced to admissible form and indicates there is no genuine issue of material fact, and where the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact).

## IV. DISCUSSION

The Title VII and § 1981 claims apply to two separate, discrete denied promotions – the May 2004 promotion to Lead PC and the September/November 2004 promotion to Network Administrator. Because Dunklin has conceded that the Title VII claim for the May

2004 promotion is time-barred (Pl.'s Resp. 7), summary judgment is due to be granted on that claim.[17]

A.      **A Word About § 1981 and § 1983**

Dunklin should have alleged his § 1981 claims as violations of 42 U.S.C. § 1983 because "§ 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981," *Bryant v. Jones*, __ F.3d __, 2009 WL 2341737, at *1 n.1 (11th Cir. 2009) (citing *Butts v. County of Volusia*, 222 F.3d 891, 894-95 (11th Cir. 2000)); *see also Webster v. Fulton County, Ga.*, 283 F.3d 1254, 1256 (11th Cir. 2002) ("Section 1981 is enforceable against a municipality through 42 U.S.C. § 1983.").  Because the Board did not raise the issue on summary judgment, however, and because Dunklin presented his arguments against summary judgment as if he brought his claims under § 1983 (*see* Pl.'s Resp. 12), the claim will not be barred for this reason.[18]

Section 1983 provides for an "additional constraint," however, on § 1981 claims against governmental entities – the discrimination must be a "custom or policy" of that entity. *Webster*, 283 F.3d at 1257 n.8; *see also Butts*, 222 F.3d at 894 n.4 (noting that failing to allege "custom or practice" for a § 1983 claim alleging a violation of § 1981 was a proper ground for granting summary judgment).  This issue also was not raised on summary judgment.  Because the relevant legal arguments have not been developed, any insufficiency

---

[17] The Board also argued in its motion that the § 1981 claims violate the statute of limitations, but Dunklin opposed that argument in his brief, and the Board did not address the defense in its reply.

[18] Dunklin will be ordered to amend his complaint for the sole purpose of properly alleging a § 1983 claim for the § 1981 allegations.

with respect to proving "custom or policy" will not be a basis for granting this motion. *See Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1265 (11th Cir. 2008) (holding that it was error for a district court to grant summary judgment without notice on an issue on which neither party sought summary judgment and which the summary judgment motion did not invite the court to address (citing *Imaging Bus. Machs., LLC v. BancTec, Inc.*, 459 F.3d 1186, 1191 (11th Cir. 2006))); *Artistic Entm't, Inc. v. City of Warner Robbins*, 331 F.3d 1196, 1202 (11th Cir. 2003) (*per curiam*) (Only when a legal issue has been "fully developed," and the evidentiary record is "complete," is summary judgment "entirely appropriate even if no formal notice has been provided."); *Wingard v. Emerald Venture Fla. LLC*, 438 F.3d 1288, 1296 (11th Cir. 2006) (distinguishing *Artistic Entm't, Inc.* in part on the ground that legal, not factual questions predominated).[19]  The parties will be instructed, however, to brief the issue.  The opinion addresses the merits of the § 1981 claim for both failures to promote and the surviving Title VII claim for the fall 2004 failure to promote.

**B.**      **The Legal Standard for Race Discrimination under Title VII/Section 1981**

Section 1981 protects against racial discrimination "during the making of contracts." *Webster*, 283 F.3d at 1256.  Title VII prohibits employment discrimination on the basis of race. *Ricci v. DeStefano*, 129 S. Ct. 2658, 2672 (2009).  A disparate treatment claim under Title VII "occurs where an employer 'has treated [a] particular person less favorably than others because of' a protected trait." *Id.* (quoting *Watson v. Fort Worth Bank & Trust*, 487

---

[19] Given the notice requirements for *sua sponte* summary judgment, out of an abundance of caution, the court declines to reject the claim on this ground.

U.S. 977, 985-86 (1988)).  Proving a violation of § 1981 and Title VII, where the facts for each claim are the same, involves the same standards and analytical framework.[20]  *Bryant*, _ F.3d _, 2009 WL 2341737, at *8 n.20; *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

A disparate treatment claim requires proof of discriminatory intent by either direct evidence, or circumstantial evidence of that intent using the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Crawford*, 529 F.3d at 975-76. This is not a direct evidence case.  Dunklin therefore must establish a *prima facie* case under the *McDonnell Douglas* framework to move forward.[21]  *See id.* at 976.  For a failure to promote claim, a *McDonnell Douglas prima facie* case demands proof that: (1) "[the plaintiff] was in fact passed over for the promotion, (2) he was qualified for the higher position, and (3) an individual of a different race was given the higher position."  *Wright v. Southland Corp.*, 187 F.3d 1287, 1290-91 (11th Cir. 1999); *see also Wilson v. B/E*

---

[20] The elements overlap with respect to proving *that* a § 1981 violation occurred.  As discussed herein, the plaintiff carries the additional burden of proving that such an offense was a violation of § 1983.  Because § 1981 "can provide no broader remedy against a state actor than section 1983, . . . a plaintiff bringing such a claim must show custom or policy within the meaning of *Monell* [*v. Dep't of Social Servs.*, 436 U.S. 658 (1978)] . . . just as the section 1983 plaintiff would."  *Busby v. City of Orlando*, 931 F.2d 764, 771 n.5 (11th Cir. 1991) (*per curiam*) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989)); *see also Butts*, 222 F.3d at 893 (noting that under *Jett*, "a plaintiff who sues a municipality under § 1983 for a violation of the rights contained in § 1981 may not rely upon the doctrine of respondeat superior"); *Webster*, 283 F.3d at 1257 n.8 (describing the custom or policy requirement from *Monell* as an "additional constraint" on § 1981 claims against governmental entities).
Dunklin's requirement to prove this element is addressed at the end of the opinion.

[21] When the opinion uses the term "*prima facie*" to describe the first step of the *McDonnell Douglas* framework, it is not using the term in its traditional sense as the "'quantum of evidence needed to create a jury question'" but instead to mean the "'establishment of the facts required to establish the *McDonnell Douglas* presumption.'"  *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1153 n.7 (11th Cir. 2005) (quoting *Wright v. Southland Corp.*, 187 F.3d 1287, 1292 (11th Cir. 1999)).

14

*Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004) (citing basically the same requirements).[22]  The Board concedes that Dunklin has established a *prima facie* case for purposes of the *McDonnell Douglas* analysis, and the court finds no reason to assume otherwise.

If the plaintiff establishes a *prima facie* case under *McDonnell Douglas*, the plaintiff establishes a presumption of unlawful discrimination. *Wright*, 187 F.3d at 1291.  The burden then shifts to the employer to "'articulate some legitimate, nondiscriminatory reason'" for the promotion. *Crawford*, 529 F.3d at 976 (quoting *McDonnell Douglas*, 411 U.S. at 802). The employer's "exceedingly light" burden is one of production, not persuasion. *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (*per curiam*) (internal quotation marks omitted).

An employer is "entitled to select the criteria upon which it based hiring decisions," *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 n.18 (11th Cir. 2000) (*en banc*), and a "subjective" reason for the employment decision may be "just as valid" as an objective reason, *id.* at 1033-34.  Indeed, "personal qualities" can "factor heavily" into choosing a candidate for a supervisory position. *Id.* at 1033.  The employer's explanation for its subjective reason must include, however, a factual basis that is "'clear and reasonably specific' so that 'the plaintiff [is] afforded a full and fair opportunity to demonstrate pretext.'" *Id.* at 1034 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258

---

[22] *Wright* makes clear that it is "inaccurate" to state that the plaintiff must prove he is a member of a protected group. 87 F.3d at 1291 nn.3-4.

(1981)) (comparing an arguably insufficient explanation – not liking someone's appearance – to a sufficient explanation, one that elucidates what *about* that appearance the employer did not like); *see also id.* at 1034 n.25 (distinguishing "purely subjective, conclusory impressions of a litigant that are devoid of objective facts which, if false, can be contradicted by testimony or other evidence").   There is no requirement, however, that an employer's subjective impressions be contemporaneously documented, or that an employer rely only on reasons that were written down.  *Id.* at 1035 n.26.

If the employer satisfies its production burden, the *McDonnell Douglas* presumption "'drops from the case.'"  *Wright*, 187 F.3d at 1291 (quoting *Walker v. Mortham*, 158 F.3d 1177, 1184 (11th Cir. 1998)).  The plaintiff retains the burden to establish that the employer denied him a promotion "on the basis of a protected personal characteristic," such as race, *id.*, but can meet this burden by demonstrating that the employer's reasons given for the adverse employment action were "mere pretext for discrimination," *Holifield*, 115 F.3d at 1565.  "The inquiry into pretext requires the court to determine, in view of all the evidence, 'whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.'" *Crawford*, 529 F.3d at 976 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). "'The district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of

16

credence.'"  *Corbitt v. Home Depot U.S.A., Inc.*, __ F.3d __, 2009 WL 1981383, at *19 (11th Cir. 2009) (quoting *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)).  And for the claim to survive summary judgment, the plaintiff must put forth sufficient evidence of pretext for each of the employer's legitimate, nondiscriminatory reasons.  *Chapman*, 229 F.3d at 1024-25.

If the evidence of pretext is the disparity between the selected candidate's qualifications and those of the plaintiff, for that evidence to suffice, the disparities must be "'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'"[23] *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (*per curiam*) (quoting *Cooper*, 390 F.3d at 732).  In challenging the employer's decision, the plaintiff should not "substitute his business judgment for that of the employer" or "quarrel[] with the wisdom" of the proffered reason for the employment action, but must meet that reason "head on and rebut it."  *Chapman*, 229 F.3d at 1030.  It is also not sufficient for a plaintiff to merely challenge *that* a proffered reason is untrue if there is no evidence that the employer (through its agent) did not honestly believe that it was.  *See Vessels*, 408 F.3d at 771 (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991)); *Cooper*, 390 F.3d at 740.

---

[23] Where qualifications are not the only basis for pretext, however, the disparity may need not need to be "so dramatic."  *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 772 (11th Cir. 2005) (*per curiam*) (citing *Alexander v. Fulton County*, 207 F.3d 1303, 1340 (11th Cir. 2000)); *accord Champ v. Calhoun County Emergency Mgmt. Agency*, 226 F. App'x 908, 914 (11th Cir. 2007) (citing this portion of *Vessels* after *Ash*).  Dunklin has presented evidence other than disparities in qualifications to support a finding of pretext.  Thus, a less strict review of qualifications may be called for, but under either standard, Dunklin loses on the May 2004 claim and moves past summary judgment on the fall 2004 claims.

Moreover, even if there is sufficient evidence for a reasonable factfinder to discredit an employer's proffered reason, that alone does not "compel" the factfinder "to find illegal discrimination." *Wilson*, 376 F.3d at 1088. Indeed, "there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (italics added) (discussing what evidence would sustain a jury's finding of liability). "[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.*; *see also Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1260 (11th Cir. 2001) (citing *Reeves* for the proposition that "a nondiscriminatory reason for the employer's action does not have to be the one proffered by the employer").

**C.     The Pretext Analysis for Both Denied Promotions**

The Board offers two overlapping reasons why it did not promote Dunklin to either position. Parker testified that Causey and Burton were better qualified than Dunklin and that Dunklin was only an average employee. Parker's explanation that Causey and Burton were better qualified counts as a legitimate, nondiscriminatory reason for promoting Causey and hiring Burton. *See, e.g.*, *Wilson*, 376 F.3d at 1090 ("[The employer] articulated a legitimate, nondiscriminatory reason for not choosing [the plaintiff] for the position: [the selected

18

candidate] was more qualified.").  Parker's statements as to Dunklin's "average" work performance are only opinion, but Parker elaborated on why he found Dunklin to be average – he did not "dig" deep into problems, and he did not go beyond what was required of him, or demonstrate an interest in acquiring more knowledge about the areas relevant to the job. This explanation is clear and reasonably specific enough to give Dunklin notice on what to rebut.  It is not necessary for Parker to produce documents or written statements to support these impressions.[24]

Dunklin has presented evidence, however, that directly rebuts Parker's claim that he believed Dunklin to be only an average employee.  Dunklin testified that Parker assigned the more difficult work orders to him, that Parker had told Dunklin he would try to secure a raise for his extra work, and that Parker said he would give Dunklin the promotion.  This evidence rebuts not only the veracity of the reasons for Parker's opinion – that Dunklin did not dig deep and go beyond his required assignments and knowledge base – but also whether Parker actually believed the reasons.  Additionally, Dove can recall nothing that stands out unfavorably against Dunklin, except for one minor incident, from the entire time he worked in the system.  Although not required to, the Board nevertheless has not presented any performance evaluations or related documentation to undermine these claims.

To move forward on his claims for the May 2004 denied promotion to Lead PC, however, Dunklin must also rebut the Board's reason that Causey was better qualified.

---

[24] Neither party discussed whether the lack of performance evaluations or other documentation supportive of the decision violated other rules or how those violations would affect the pretext analysis.

Parker knew Causey's work as intimately as he knew Dunklin's. Parker's testimony describes Causey's brilliance, his persistence, and his responsiveness. Parker described Causey as the person other technicians would turn to when they could not solve a problem.[25]

Dunklin challenges Causey's inferior educational qualities, and indeed, Causey lacks an associate's or four-year college degree. Parker testified that on paper, a person in Dunklin's position would appear better trained than someone in Causey's position. But Parker explicitly testified that education beyond high school was not required for the position and that educational experience was not all that mattered to the application. Dunklin has not rebutted that notion. Nor has Dunklin presented any evidence that the descriptions of Causey's work performance are insincere, inconsistent, implausible, or incoherent. Indeed, even if Dunklin were an above-average employee, any disparity between his and Causey's qualifications is not strong enough to warrant a reasonable factfinder to disbelieve Parker's reasons for promoting Causey, especially where Dunklin has presented *no* evidence that Causey's work performance was anything different from what Parker described. Summary judgment is due to be granted on the § 1981/1983 claim related to the May 2004 promotion.

The Board's explanation for why Burton was better qualified for the Network Administrator position, however, is weaker, and Dunklin's rebuttal, more effective. Parker knew Burton only through church. Parker had no comparative work experience with Burton

_____

[25] Causey too described his own lengthy prior work experience (Causey Dep. 7-12, 16, 18, 20), though this testimony is not supported or challenged by a copy of his application. It is also not entirely clear to the ordinary reader how certain aspects of his experience would better position him for the Lead PC job's specific responsibilities.

to assess his on-the-job performance, and Burton apparently did not provide references to inform Parker of that experience.  Even if higher education is not required for the job, Burton's educational background is relevant to Parker's decision-making process because of his unfamiliarity with Burton's work performance.  Parker effectively acknowledged that Burton's educational degrees are inferior to Dunklin's.  And although Burton's job experience with Knology appears extensive, the testimonial evidence fails to connect that job experience with the qualifications or responsibilities of the job.  In fact, it is Parker's testimony that Burton's interview and prior supervisory experience made him more qualified for the job.  The deposition, however, provides no details about the interview aside from that it covered the information on the application.  There is also no evidence that Parker knew of Burton's supervisory experience *at the time* he hired him.

Additionally, Dunklin has presented evidence that he was above average, or at least Parker believed him to be, and by the same token, closer to Burton in terms of qualifications.  Dunklin also testified to supervisory experience in his prior job.  Furthermore, Parker could not recall why the position for which Dunklin applied was taken down in September 2004, and Dunklin testified that Barker never provided a reason, even at Dunklin's request.

In summary, the evidence before the court on Burton's hire shows that material facts relating to pretext are in dispute.  Viewed in the light most favorable to Dunklin, those facts include the following:  the Board cannot provide a reason why the position was taken down the first time; Parker knew Burton personally but knew nothing about his work experience at the time he hired him; Burton submitted no references (at least on paper) to inform Parker

of his qualifications and past work experience; Burton's work experience, possibly extensive, has not been directly connected to the job requirements and responsibilities of the Network Administrator position; Parker's testimony about Burton's supervisory skills may have been based only on what Parker heard from Burton's deposition; Dunklin worked for the Board for some years without discipline, reprimand, or negative evaluations; Dunklin's educational experience in combination with his work experience, at least by Parker's acknowledgment, shows a better trained candidate on paper; and, at one point, Parker offered to secure a salary increase for Dunklin because of Dunklin's work, the amount and quality of which was not only described by Dunklin but also uncontradicted by work evaluations or personnel records.[26]  On these facts, the case must move forward as to the fall 2004 denied promotion.

It is true that just because there is sufficient evidence that a reasonable factfinder could find the proffered reasons discredited, that does not protect Dunklin automatically from losing on summary judgment.  It is possible that the "real" reason for Parker's decision was not discriminatory at all.  It could be that Parker just wanted to hire his friend.  But Parker himself testified that his association with Burton did not influence his decision in any way. The Board has presented no other evidence that disposes of all genuine disputes of material fact as to whether the promotion was discriminatory, and the evidence in the record does not justify summary judgment for reasons not articulated by the Board.  Although the issues of fact Dunklin created are arguably weak, the Board hardly presented "abundant and

---

[26] Parker did testify that he would not have hired Dunklin regardless of Burton's application but presumably that was only for the reason of Dunklin's "average" performance, which is sufficiently challenged for summary judgment purposes.

uncontroverted independent evidence that no discrimination had occurred," *Reeves*, 530 U.S. at 148.  Under these circumstances, summary judgment is due to be denied on the claims for the fall 2004 denied promotions.[27]

## V.  CONCLUSION

For the reasons stated, it is ORDERED that:

(1)    The Board's motion for summary judgment (Doc. # 17) is GRANTED in part and DENIED in part.  It is granted as to all claims related to the hires to the Data Management Technician III positions (*see supra* note 16).  It is also granted as to the claims for the May 2004 failure to promote to Lead PC.  However, it is denied as to the § 1981 and Title VII claims on the fall 2004 failure to promote to Network Administrator.

(2)    **On or before August 31, 2009**, Dunklin shall file the amended complaint in conformity with this Opinion; and

(3)    **On or before September 7, 2009,** Dunklin shall file a response on why his remaining § 1981/1983 claim arising out of the fall 2004 failure to promote should not be dismissed for failing to show a custom or policy, as required by § 1983.  The Board shall file a reply to Dunklin's response to this Order **on or before September 14, 2009.**

The Order that last continued this case to the December 7, 2009 trial term, ordered that all other deadlines were suspended.  (Doc. # 25.)  An order resetting those deadlines will be entered separately after the legal issues raised in this next set of briefs is resolved.

---

[27] *See also Anderson*, 477 U.S. at 255 ("Neither do we suggest that . . . the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.").

DONE this 24th day of August, 2009.

     /s/   W.  Keith Watkins
UNITED STATES DISTRICT JUDGE